UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FERNANDO RUBALCAVA, et al.,<br><br>Defendant. | No. 1:13-cr-00077-NONE<br><br>ORDER DENYING MOTION AND AMENDED MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. Nos. 249, 252) |

Pending before the court is defendant Fernando Rubalcava's motion and amended motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The pending motions are largely based on defendant's medical condition and the risks posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 249-1 at 8–12.) For the reasons explained below, defendant's motions will be denied.

**BACKGROUND**

On February 28, 2013, defendant Fernando Rubalcava was indicted on charges of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One) and possession with the intent to distribute the same amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Three). On November 4, 2014, defendant pleaded guilty to one count of

1

conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) as charged in a superseding information. (Doc. Nos. 120; 160, 162.)

Defendant's criminal conduct centered on a drug transaction at his residence in which he attempted to sell 13 pounds of methamphetamine to a confidential informant. (Doc. No. 157 (Presentence Report) at 4–5.) Federal agents executed a search warrant on defendant's residence and recovered over 4,500 grams of methamphetamine, over 1,500 grams of marijuana, and almost 17 grams of cocaine. (*Id.* at 5.) Prior to his sentencing it was determined that under the U.S. Sentencing Guidelines, defendant Rubalcava's adjusted offense level was 35 and his criminal history category was III, resulting in an advisory sentencing guideline range calling for a sentence of between 210 and 240 months imprisonment. (*Id.* at 18.) The U.S. Probation Office recommended a downward variance based upon consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a) to a sentence of 120 months imprisonment. (*Id.*) On October 13, 2015, defendant was sentenced to a term of imprisonment of 60 months with a term of supervised release of 36 months to follow. (Doc. No. 168 at 2–3.)

Defendant was placed on supervised release on February 15, 2019 following his release from prison, but he violated the conditions of his supervised release by testing positive for the use of cocaine in March, April, and May of 2019. (Doc. No. 216 at 1–2.) Accordingly, an arrest warrant was issued for defendant, he was ordered detained during his initial hearing, and he later admitted to violating the terms of his supervised release. (Doc. Nos. 215, 219, 226.) On August 5, 2019, defendant was released to participate in Teen Challenge, Residential Drug Treatment Program for one year, (Doc. No. 229), and on December 2, 2019, the court revoked his original term supervised release and sentenced him to time served with a new term of supervised release for 28 months, (Doc. No. 233 at 2–3.) Just weeks later, defendant submitted a urine sample which ultimately tested positive for cocaine. (Doc. No. 234 at 1–2.) As a result, defendant was arrested on January 16, 2020 and thereafter entered an admission that he had again violated the terms of his supervised release. (Doc. Nos. 236, 244.) The U.S. Probation Office recommended that defendant be sentenced to two years in custody with no supervision to follow on the violation. (See Doc. No. 246 at 1.) On March 13, 2020, the court again revoked defendant's

supervised release and sentenced him to 11 months imprisonment, as requested by defendant, to be followed by 25 month term of supervised release. (Doc. No. 248 at 2–3.)

On May 13, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 249-1.)[1] On June 1, 2020, the government filed its opposition to the motion, and on June 5, 2020, defendant filed his reply thereto. (Doc. Nos. 250, 251.) On June 12, 2020, defendant submitted an amended motion addressing exhaustion of administrative remedies. (Doc. No. 252.) On June 24, 2020, defendant submitted a second supplement memorandum addressing the alleged conditions of defendant's confinement at the Fresno County Jail, and on July 24, 2020, further informed the court regarding developments at the Fresno County Jail. (Doc. Nos. 253, 254.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the

---

[1] According to defendant's counsel, defendant has remained in custody at the Fresno County Jail since he was arrested on January 16, 2020. (Doc. No. 249-1 at 8.)

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General

> receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

---

Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at \*2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at \*8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at \*1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at \*3 (W.D. Wash. May 7, 2020).

---

prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

# ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

## A.   Administrative Exhaustion

At the time the original motion was filed, defendant conceded that he had not made an administrative request to the warden at his facility seeking compassionate release. (Doc. No. 249-1 at 15.) However, defendant is being housed in Fresno County Jail, not a BOP facility. Many district courts have concluded that exhaustion is satisfied, or alternatively excused, when a defendant seeking compassionate release is not currently in the custody of the BOP. *See, e.g.*, *United States v. Jepsen*, No. 3:19-cv-00073(VLB), 2020 WL 1640232, at *3 (D. Conn. Apr. 1, 2020) (finding exhaustion satisfied where defendant was not in a BOP facility); *United States v. Gonzalez*, NO. 2:18-CR-0232-TOR-15, 2020 WL 1536155, (E.D. Wash. Mar. 31, 2020) (finding exhaustion was excused where the defendant was not confined in a BOP facility). As defendant has explained in his amended motion, when he eventually submitted an administrative request to BOP's regional counsel, after the pending motion for compassionate release was filed with the court, the BOP responded the same day as follows: "Because Mr. Rubalcava is not in BOP custody, BOP cannot evaluate him for compassionate release and will not be seeking a motion for

compassionate release on his behalf at this time." (Doc. No. 252 at 7.) Because the administrative exhaustion procedures are specific to BOP, *see* 28 C.F.R. § 542.15(a), defendant in Rubalcava's position "is essentially caught in a 'Catch-22'; neither the warden at [the county jail] nor the BOP will consider his request because of his designation to [the county jail], a non-BOP facility," *Jepsen*, 2020 WL 1640232, at *3.

Therefore, given the circumstances of defendant Rubalcava's confinement, the court concludes that administrative exhaustion is satisfied here. Therefore, the court below will address the pending motion on the merits.

**B.     Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or

/////

7

>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Rubalcava argues that extraordinary and compelling reasons warrant his compassionate release due to his medical conditions. (Doc. No. 249-1 at 18–19.) Defendant Rubalcava is 27 years old and was allegedly "born with a heart murmur causing shortness of breath, and suffers from and is being treated for severe acid reflux." (*Id.* at 19.) However, under the standards set out above, he must demonstrate that he is "suffering from a serious physical . . . condition . . . that substantially diminishes [his] ability . . . to provide self-care" in Fresno County Jail and "from which he . . . is not expected to recover" from. *See* U.S.S.G. § 1B1.13, cmt. n.1

(A)(ii).  The only documentary support that the court could locate with respect to defendant's medical condition is that, at the time of his sentencing in 2015, it was noted he had a heart murmur.  (Doc. No. 157 (Presentence Report) at 12.)  At that time, "defendant stated he was born with a heart murmur, and except for the infrequent instances where he becomes short of breath, it does not bother him."  (*Id.*)  Defendant has provided no evidence indicating that this condition has become worse or more sever since the time of his original sentencing.  Based on this record, the court is unable to find that defendant's heart murmur is a "serious" medical condition.  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

Moreover, the U.S. Centers for Disease Control and Prevention ("CDC") has apparently not identified heart murmurs as a category of health conditions placing individuals at risk for contracting a severe illness from COVID-19.  *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 7, 2020).  While the CDC lists serious heart conditions as an at-risk category, those circumstances include a total heart failure (e.g., heart attacks), coronary artery disease, cardiomyopathies, and pulmonary hypertension.  *Id.*  But, there has been no showing here that defendant Rubalcava suffers from any of these conditions that have been recognized as putting those who suffer from them at a higher risk of severe illness due to COVID-19.

Even assuming the court would accept the notion that a heart murmur is a "serious" medical condition for purposes of compassionate release, defendant has not shown how that condition "substantially diminishes [his] ability . . . to provide self-care" in Fresno County Jail in light of the COVID-19 pandemic.  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  It is true that Fresno County Jail has suffered a significant outbreak of the virus.  (*See* Doc. No. 254.)[5]  However,

---

[5] The court receives weekly situational reports from the U.S. Marshal regarding COVID-19's impact on the federal prisoner population within our district.  According to that report, as of today 113 county inmates but only 7 federal inmates being held at the Fresno County Jail are reported as having tested positive for the virus and not yet cleared.  Thankfully, defendant Rubalcava is not among those 7.  Moreover, these reported numbers are a significant improvement over those being reported in July of this year.  The undersigned does not necessarily take these reported

defendant's risk from COVID-19 is speculative given that his heart murmur does not place him in any recognized at-risk category. Moreover, "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020). Nothing in the record before the court establishes that defendant is unable to receive any treatment required for his medical condition while he is incarcerated at Fresno County Jail.

Therefore, the court does not find extraordinary and compelling reasons justifying defendant Rubalcava's compassionate release pursuant to § 3582(c)(1)(A).

**C.    Consistency With the § 3553(a) Factors**

Because the pending motion fails to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a). Nonetheless, the court would note that both at the time of his original sentencing and when twice sentenced on violations of the conditions of his supervised release, defendant Rubalcava received sentences more lenient than that recommended.

**CONCLUSION**

For the reasons explained above, defendant's motion and amended motion for compassionate release (Doc. Nos. 249, 252) are denied.

IT IS SO ORDERED.

Dated:   **September 8, 2020**

UNITED STATES DISTRICT JUDGE

---

numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.